# Birmingham Nat. Bank *v.* Steele *et al.*

*Bill in Equity by Creditor to Have Declared Fraudulent and Void Conveyances made by Debtor, and Subject the Property Conveyed to Complainant's Debts.*

1. *Weight of answer as evidence.*—The answer to a bill, when responsive and sworn to, must prevail against the testimony of one witness, however full and explicit, unless witness is supported by corroborating circumstances, which disconnected from his evidence, will tend to establish the charge made by the bill, which are denied by the answer.

2. *Evidence of notice; what is not.*—The fact that one charged with collusion, resided as a boarder, with a number of other boarders, in the house of the debtor, without more, does not show notice of the debtor's financial condition.

3. *Failure to examine debtor not evidence of guilt.*—When a debtor is

charged with fraud and collusion in disposing of property, to defeat the debts of creditors, and makes full and explicit answers to interrogatories in complainant creditor's bill, under oath, the fact that such debtor is not examined as a witness in his own behalf is not, of itself, a circumstance tending to show the guilt of the defendants.

APPEAL from Jefferson Chancery Court.
Heard before the Hon. THOS. COBBS.

MOUNTJOY & TOMLINSON, for appellant.—1. Mrs. Steele was insolvent at the time of her conveyance to Brown, and Brown was chargeable with notice of that fact. If Mrs. Steele sold for the purpose of hindering, delaying or defrauding the complainant and her other creditors, the conveyance to Brown was invalid as to them.—*Crawford v. Kirksey*, 55 Ala. 282 ; *Lehman v. Kelly*, 68 Ala. 192 ; also, Brickell's Digest, Vol. 3, page 516, paragraphs 143, 144, 145, 146 and 147. 2. To charge a party with notice of fraud, it is not necessary that he should have actual notice, if he is chargeable with constructive notice, and this may be inferred from a knowledge of suggestive facts, which, if followed up, would have led to the discovery of the fraud.—*Hodges v. Coleman*, 76 Ala. 103 ; Brickell's Digest, Vol. 3, page 518, paragraphs 148, 149 and 150 ; *McDowell v. Steel*, 87 Ala. 493 ; *Blum v. Simpson*, 17 S. W. 402 . 66 Texas, 84. 3. On question of notice, circumstances may overcome the sworn denials of defendants.—*Thomas v. Rembert*, 63 Ala. 561 ; *McDowell v. Steel*, 87 Ala. 498 ; *Stickney v. Adler, Malone & Co.*, 91 Ala. 198. 4. Sworn answer is overcome by one witness with corroborating circumstances, or by strong circumstances alone. *Chance v. Teeple*, 3 Green's N. J. Equity Reports, 173 ; *Bent v. Smith*, 7 C. E. Green's N. J. Equity Report, 560 ; *Gould v. Williamson*, 21 Maine, 273. 5. When new matter is brought forward in the answer not responsive to the allegations of the bill, or to the interrogatories included in or appended to the bill, it is entitled to no weight in the hearing unless proven.—*Gordon v. Bell*, 50 Ala. 213.

W. M. SPENCER, for appellees, filed printed brief and argument, citing *Marshall v. Croom*, 52 Ala. 554 ; *Beene v. Randall*, 23 Ala. 514 ; *Martinez v. Lindsey*, 91 Ala. 334 ; *Patterson v. Bragg*, 10 So. Rep. 257 ; *Wynne v. Rosette*, 66 Ala. 517.

HARALSON, J.—The complainant recovered a judgment in the City Court of Birmingham, on the 4th November, 1890, against the defendant, Mrs. Fannie A. Steele, and J. M. Thompson, for $2,911.50 and costs, which judgment was re-

corded in the office of the judge of probate of Jefferson county, on the same day it was rendered ; and, on the 21st of February, 1891, complainant caused an execution to issue on said judgment, which, coming to the hands of the sheriff of the county, was by him, on the same day it was received, returned "no property found."

The bill in this case was filed on the 24th February, 1891, against said Fannie A. Steele and James H. Brown.

The 3rd paragraph of the bill sets up, that Mrs. Steele was seized and possessed of certain valuable real estate, in the City of Birmingham, in said section three described, and on the 24th of September, 1890, while the said suit of complainant against her and said Thompson, was pending in the City Court of Birmingham, the defendant, Mrs. Steele, conveyed to said James H. Brown, the said real estate, on the recited consideration of $25,000 ; and it is averred, that the consideration expressed in the conveyance is not the true one, but a portion thereof is simulated and fictitious ; that before, and at the time of the conveyance, said Brown knew that said Mrs. Steele was heavily involved in debt, and was insolvent; that there were suits pending against her, nearing judgment ; that said conveyance was executed by Mrs. Steele for the purpose of hindering, delaying and defrauding complainant and other creditors of said Mrs. Steele, and that said Brown colluded with her, in such intent and purpose.

In the 4th paragraph of the bill, it is stated, that said Mrs. Steele, was seized and possessed of certain other real estate in said City of Birmingham, in said paragraph described ; that this property was encumbered by a mortgage, given by Mrs. Steele, to J. M. Lewis, executed on the 31st day of October, 1889, to secure a note of $2,000, and that said Brown pretended to have purchased and received from said Lewis an assignment of said mortgage and note, but that said Brown, purchased said note and mortgage for Mrs. Steele, with her money, and took the title in his name, in trust for her, so that said property might not be open to execution, and to the attack of creditors of Mrs. Steele; that on the 10th January, 1891, said Brown, after having advertised said property for sale under said mortgage, sold the same, and became, himself, the purchaser, (as his deed shows) for the sum of $2,099.85, and received a deed from the auctioneer. (The mortgage from Mrs. Steele to said Lewis contained the provision, that said Lewis or his assigns may bid at said sale and purchase said property, if the highest bidder therefor, and said mortgagee or the auctioneer may make deed to the purchaser.)

The bill then avers, that the whole of said proceedings and sale under said mortgage was collusive, and made for the purpose of hindering, delaying and defrauding complainant and the other creditors of Mrs. Steele. The prayer is for a decree, declaring fraudulent and void as to complainant, said conveyances described in the 3rd and 4th paragraphs of the bill, and subjecting the same to the payment of the complainant's debt.

The chancellor decreed, upon the evidence, that the complainant was not entitled to relief, and dismissed the bill. The appeal is to reverse that decree.

The complainant waived oath to the answers of the defendants, but it filed seventeen searching interrogatories, which covered all the allegations of the bill and called for the discovery by them of every material fact involved in the litigation, and these interrogatories complainant required, and they were answered under oath, by each of the defendants. Their answers to the bill and to the interrogatories, are very full denials of every allegation of fraud done by them, or either of them. They each give an account of the transactions alleged against them as being fraudulent, which if true, make them fair and bona fide.

The cause must be determined on the well settled principle, that the answers must prevail, unless disproved by two witnesses, or by one witness with corroborating circumstances.—Marshall v. Croom, 52 Ala. 554; Wynn v. Rosette, 66 Ala. 517; Pattison v. Bragg, 95 Ala. 55.

The answer, if responsive to the bill, must prevail against the testimony of one witness, however full, clear and explicit, unless supported by corroborating circumstances, which disconnected from the evidence of the witness, will tend to establish the charges made by the bill, which are denied by the answer.—Beene v. Randall, 23 Ala. 514.

The complainant, in order to overcome the denials of the answers, examined two witnesses, the testimony of only one of whom, needs to be noticed, since the other knew nothing material to the issues. R. D. Johnston, the only witness whose evidence needs to be noticed, was the president of the plaintiff corporation. He swears, that in the spring of 1889, he went to Brown's office, and in a conversation he had with him, told him of the indebtedness of Mrs. Steele to the plaintiff, and of her indebtedness to the American National Bank, and Elyton Land Co.; and that Brown told him, he lived in Mrs. Steele's house, as a boarder, and took great interest in her affairs, and that he was endeavoring to help her, and would do it. He says

he was impressed with the fact, that Brown was familiar with Mrs. Steele's financial condition, but does not give the facts, on which he based his impression.

Brown's version of this interview is, that Mrs. Steele, early in October, 1889, had requested him to try and negotiate a loan for her, of $2,000,—as she desired to pay an indebtedness to the plaintiff,—and he had promised to do so, and she requested him if he saw R. D. Johnston, to tell him she would try and pay him, soon; and a day or two afterwards, he met Johnston on 20th street, and told him what Mrs. Steele had said; and of his promise to Mrs. Steele, to try and negotiate a loan for her; that afterwards, about the 25th of October, Johnston called at his office, and asked what about Mrs. Steele's loan, that she had not been to see him about it, and he told him, that he had the promise of a loan for her, about the last of the month, and was sure he would effect it; and this was the last conversation he had with Johnston on the subject. Brown also denies, that Johnston mentioned to him anything about Mrs. Steele's owing the American National Bank and Elyton Land Co., for, if he had mentioned that matter, he could and would have told him, that that debt had been paid the June before, as he personally knew. Mrs. Steele, in her answers to the interrogatories to the bill, corroborates Brown in his testimony, and it is evident, from the evidence of the two, that Johnston is mistaken as to the date of that interview, and of what occurred. He himself swears, that on the 24th of September, the date of Mrs. Steele's conveyance to Brown, he thought Mrs. Steele was solvent, and Brown swears that he also thought so.

The complainant arrays what it deems many circumstances of fraud, in order to corroborate the witness, Johnston, some of which deserve attention.

As an evidence of Mrs. Steele's fraudulent intent, it is urged from what she said, that she regarded her debt to the bank as inequitable, and she did not intend to pay it. What she did say on that subject in her answer was, "She admits the signing of said notes with one J. M. Thompson. The said note of $2,100 she signed as the surety of said Thompson, and he received the consideration of said note. The other note of $750.00, credited with $325.00, is the note of defendant and she received the consideration thereof. She offered to pay the balance due on said note, but complainant refused to accept the same, unless she would pay both of said notes." In her answer to the 8th interrogatory, she says she offered to pay the balance on her individual debt, complainant refused to take it, unless she would pay the

other note of J. M. Thompson, on which she was surety, for $2,100, and also the attorney's fees. She also says, "Thompson had promised to pay his note, and he was able to pay, and she had requested complainant to collect the same out of him.

This does not sustain the charge, that Mrs. Steele thought her surety debt to the bank was inequitable, but rather, that she did not desire to pay it, when the bank, by pursuing Thompson, could make it out of him.

It is again said, that Mrs. Steele does not deny her insolvency, as alleged in the bill. A sufficient reply to this alleged evidence of fraud, if it could possibly be so considered, is that, perhaps, she could not do so truthfully.

It is urged again, as a circumstance showing fraud, that she does not show what she did with the cash she received from Brown, on her sale to him of the land mentioned in paragraph three of the bill, and that, taking his notes, for $15,000, in part payment thereof, she demanded and received no security from him. She was under no obligation, to discover what she did with her money, unless called on to do so. She does tell why she did not pay her own and the Thompson note to the complainant, the only part of the money in which the complainant was interested. And as to not having demanded security from Brown, for the deferred payment, it is explained by both of them, that Brown expected, at the time, to improve the property, and did not desire to encumber it with a mortgage, as he would have to borrow the money with which to make the improvement, and mortgage the property to do so; but, if he did not improve, he would secure her by mortgage or otherwise. Besides, she retained her vendor's lien, and the evidence tends to show that Brown was solvent, worth about $40,000.

The proof that Brown resided in the house of Mrs. Steele, without more, does not show that he, more than any one of the other six or eight boarders, was familiar with her financial affairs; and it is shown, that a man by the name of Warren, was her business agent.

Brown's conduct is criticised, and it is brought forward as an evidence of his fraudulent participation in Mrs. Steele's alleged fraudulent devices, that he knew, when he purchased and took conveyance from Mrs. Steele, of the property mentioned in section three of the bill, that there was a mortgage on it, and he took no steps to remove it; that shortly, thereafter, he purchased this mortgage and the note it secured, of $2,000, of J. M. Lewis, and took an assignment of them to himself, and advertised and sold property under the mort-

gage, which was worth $10,000, for the small sum of $2,099.85.

He certainly had the right to buy the mortgage, and it was to his interest to do so, since the property he purchased from Mrs. Steele, mentioned in section three of the bill, as the proof shows, was included in this mortgage; and, when he made his purchase from Mrs. Steele, he had little occasion to be concerned about the removal of this mortgage, inasmuch as it was on other property besides that he was purchasing, worth, as is shown, four or five times the amount of the debt. And, the explanation Brown gives of his reasons for an early foreclosure are consistent with an honest purpose. He says, that in the month of November, 1890, he contemplated building on the land he purchased from Mrs. Steele, and to give a mortgage on it, to borrow the money with which to make the improvement. To do this, the mortgage of Mrs. Steele to Lewis for $2,000, had to be gotten off the property, as the party from whom he expected to borrow the money demanded a first mortgage. Therefore, on the 29th of November, he purchased said note and mortgage from Lewis, and Mrs. Steele failing to pay the same, he proceeded to sell the property under the mortgage, and himself became the purchaser, as he was authorized to do by the terms of the instrument, and took a deed from the auctioneer, as the mortgage authorized him to give. The sale was not void, on these accounts, and if voidable, it was only so at the option of the mortgagor, seasonably expressed, but valid as to all other parties.—*Knox v. Armistead*, 87 Ala. 511; *Martinez v. Lindsay*, 91 Ala. 336.

It is urged again, that Brown knew of Mrs. Steele's indebtedness to the bank, and her indebtedness generally; but, Brown swears he did not know of her indebtedness to the bank until October, 1889, and that he did not hear of the debt that she and said Thompson owed the bank, until November or December, 1890, and Mrs. Steele swears she did not know when he heard of it. Brown heard of the individual debt of Mrs. Steele to the bank, when she requested him, in October, 1889, to negotiate a loan for her, as she desired to pay that debt. It must be stated that the evidence does not show that Brown knew Mrs. Steele to have been insolvent when he had these alleged transactions with her, nor did he know, so far as the proof shows, the extent of her indebtedness. Outside of what she owes the bank, if she owes anything, we are unable from the evidence to estimate.

The fact that Mrs. Steele was not examined as a witness in the cause, is claimed as evidence tending to show the

[Mobile and Ohio R. R. Co. v. Nicholas, et al.]

guilt of the parties. It must be remembered, however, that she made full and explicit answer to the bill, denying every allegation of fraud, as did Brown, and that she answered under oath, all the interrogatories propounded to her, which covered every material allegation of the bill, and all the discoveries the complainant desired of her. She could have added nothing by having herself examined. Brown was examined as a witness, as we presume, alone for the purpose of rebutting the evidence of R. D. Johnston, about matters that Mrs. Steele could not have deposed to, for she knew nothing of them.

We are constrained, after this view of the evidence, which might be greatly prolonged, to sustain the decree of the chancellor.

Affirmed.